

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00789-CR

John Christopher **DOMINGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR3592
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  March 25, 2015

AFFIRMED

Appellant John Christopher Dominguez appeals his convictions for aggravated kidnapping and sexual assault of a child. Because we conclude that the trial court properly admitted the extraneous offense testimony and Dominguez failed to prove, by a preponderance of the evidence, that he voluntarily released his kidnapping victim in a safe place, we affirm the trial court's judgment.

**BACKGROUND**

Dominguez was indicted for eighteen counts of criminal conduct including aggravated kidnapping with intent to commit sexual assault, sexual assault, and sexual assault of a child, committed on nine different dates against two different complainants. The State waived three counts prior to trial. The trial court granted Dominguez's motion for severance, and the State elected to proceed on Counts I (aggravated kidnapping) and III (sexual assault of a child) of the indictment naming D.P. as the complainant. The case proceeded to trial on September 10, 2013.

At trial, the following evidence was presented. Dominguez and sixteen-year-old D.P. began corresponding through Facebook in late 2012. On January 18, 2013, D.P. agreed to let Dominguez pick up her and a friend, and together they all went to the mall. Two days later, Dominguez again picked up D.P. and the same friend from the post office near the friend's home on the south side of San Antonio.

Prior to Dominguez's arrival, D.P. sent Dominguez a message via Facebook saying, "I didn't dress up today, I'm just wearing my shorts and a sweater." After making at least one stop along the way, the three eventually ended up at the Sahara Motel. The girls went into the motel room while Dominguez retrieved a duffel bag from his car's trunk.

D.P. testified that her friend started to panic and that D.P. told her to go into the bathroom and lock the door behind her. Shortly thereafter, Dominguez sexually assaulted D.P. After the assault, D.P. went into the bathroom with her friend. Dominguez knocked on the door and told the girls that he was leaving and that he would return in a couple of hours. After Dominguez left, the girls remained in the bathroom during which time they "cried and fell asleep."

After approximately thirty minutes, the two girls emerged from the bathroom and used the telephone located in the motel room to call for a ride. D.P. eventually reached her sister. However, because D.P. was not sure where they were, her sister told her to look for the nearest intersection.

Unable to find anyone in the motel offices, D.P. and her friend ran to a nearby Pizza Hut where they again called D.P.'s sister who picked them up there twenty minutes later.

D.P. did not tell her sister about the assault. However, three to four days later, D.P.'s friend's mother confronted D.P. about what happened at the motel. D.P. confessed that she had been sexually assaulted.

The jury found Dominguez guilty of both counts as charged in the indictment. Dominguez elected to be punished by the trial court and a punishment hearing was held at a later date. The trial court sentenced Dominguez to sixty-years' confinement for the aggravated kidnapping and twenty-years' confinement for the sexual assault of a child, both sentences to run concurrently. Additionally, the trial court also revoked Dominguez's probation on a previous criminal matter.

On appeal, Dominguez complains that the trial court erred by admitting testimony regarding alleged extraneous offenses and by sentencing him to a term of sixty years' confinement for the aggravated kidnapping as a first-degree felony.

We first address the State's extraneous offense evidence.

**EXTRANEOUS OFFENSE EVIDENCE**

The evidence in question was the testimony from another witness claiming Dominguez engaged in sexual contact with her when she was underage. B.F. testified that she and Dominguez had many sexual encounters when she was fifteen and sixteen years old. Some of these encounters were captured on cell phone video. B.F. acknowledged viewing several of these videos prior to her testimony.

The defense objected to B.F.'s testimony based on Texas Rules of Evidence 403 and 404. *See* TEX. R. EVID. 403, 404. The State did not respond directly to the objections, but instead asserted the testimony was proffered pursuant to article 38.37, section 2 as character conformity

and propensity evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2014). The State did not respond directly to the defense objections.

## A.  Standard of Review

"A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

## B.  Arguments of the Parties

The State contends the proffered testimony is admissible pursuant to article 38.37, section 2, as character conformity and propensity evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

Dominguez counters that he was indicted before article 38.37 became effective and that the criminal "proceeding" in the instant case commenced with the return of the grand jury indictment on April 22, 2013, and thus article 38.37, Section 2(b) did not apply to any part of his prosecution, even though his trial began after September 1, 2013. Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 3, 2013 Tex. Gen. Laws 1167, 1168 ("The Act takes effect September 1, 2013.").

## C.  Texas Code of Criminal Procedure article 38.37

Texas Code of Criminal Procedure article 38.37, section 2(b) provides that, notwithstanding Rules 404 and 405, "evidence that the defendant has committed a separate offense [i.e., sexual assault of a child] may be admitted in the trial . . . for any bearing [it] has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). This particular

section of article 38.37 became effective on September 1, 2013. The enactment paragraph pertaining to section 2 of article 38.37 provides:

> *The change in law made by this Act applies to the admissibility of evidence in a criminal proceeding that commences on or after the effective date of this Act.* The admissibility of evidence in a criminal proceeding that commences before the effective date of this Act is covered by the law in effect when the proceeding commenced, and the former law is continued in effect for that purpose.

Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 2, 2013 Tex. Gen. Laws 1167, 1168 (emphasis added).

**D.     Analysis**

*1.     Effective Date*

In *Howland v. State*, 990 S.W.2d 274, 277 (Tex. Crim. App. 1999), the Court of Criminal Appeals held that "article 38.37 is applicable to any one of many isolated proceedings within a prosecution, so long as the proceeding at issue occurred after [the statute's effective date]." We conclude the trial court did not err in admitting B.F.'s testimony under article 38.37. *See Mata v. State*, 991 S.W.2d 900, 904 (Tex. App.—Beaumont 1999, pet. ref'd) (holding defendant's trial was a "criminal proceeding" for purposes of applying statute which governed admission of extraneous offenses during punishment phase and which applied to any criminal proceeding that commenced on or after effective date of statute, and thus, extraneous offenses were admissible under statute, even though defendant was indicted prior to effective date of statute). Dominguez's first issue is overruled.

*2.     Ex Post Facto *Laws

a.     Arguments of the Parties

Dominguez next argues that the admission of B.F.'s testimony violated his constitutional right to be free from ex post facto laws under the Texas and United States Constitutions. *See* U.S. CONST. art. I, § 10 cl. 1 (prohibiting passage of ex post facto law); TEX. CONST. art. I, § 16 (same).

The State contends that the retroactive application of article 38.37, § 2(b) merely changed the way in which evidence may be placed before the jury and how that evidence is used.

### b. Ex Post Facto Prohibitions

An ex post facto law is any law that

(1)  punishes as a crime any act that was innocent when performed;
(2)  inflicts greater punishment than the law attached to a criminal offense when committed;
(3)  deprives the accused of any defense available at the time the act was committed; or
(4)  alters the legal rules of evidence and requires less or different testimony than the law required at the time of the commission of the offense to convict the accused.

*See Carmell v. Texas*, 529 U.S. 513, 522 (2000); *In re Hall*, 433 S.W.3d 203, 214 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding).  This case turns on an evaluation of the fourth category—changes to the rules of evidence.

In order to determine whether the testimony constituted an ex post facto application of amended article 38.37, we compare the statute with its predecessor, including any annotations, and decide whether the amended statute permits conviction under less or different evidence from that required under the previous statute.  *See Lindsey v. State*, 672 S.W.2d 892, 894 (Tex. App.—Dallas 1984, pet. ref'd).

### c. Application of Texas Code of Criminal Procedure Article 38.37

In *McCulloch v. State*, 39 S.W.3d 678 (Tex. App.—Beaumont 2001, pet. ref'd), the appellant also raised an ex post facto challenge to the original version of article 38.37, also enacted after appellant's charged offense.  Prior to that enactment, similar sex offenses against the same child complainant were not admissible to show the defendant's propensity or character conformity.  After the enactment, such similar offenses against the same complainant were admissible to show the defendant's propensity to commit the act or to show conformity to character.

- 6 -

The Beaumont Court of Appeals held that there was no ex post facto violation because the change in the evidentiary rule did not "lower the quantum of evidence necessary to support a conviction for aggravated sexual assault," and did not eliminate an element of the offense to be proved. *Id.* at 683–84. We agree with this reasoning.

Article 38.37, section 2(b) allows testimony regarding other extraneous offenses to show character conformity. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). The statute neither changes the State's burden of proof to support a conviction for sexual assault of child nor lessens the amount of evidence required to sustain a conviction. *McCulloch*, 39 S.W.3d at 694.

Accordingly, we cannot conclude that an ex post facto violation occurred, and we overrule Dominguez's second issue.

We next turn to Dominguez's assertion the trial court erred in sentencing him under the first degree felony punishment guidelines.

**SAFE RELEASE**

In his last issue on appeal, Dominguez contends that because he voluntarily released D.P. in a safe place, the trial court erred by sentencing him to a term of sixty-years' confinement, in accordance with a first-degree felony, when the maximum term of punishment should have been that of a second-degree felony, which carries a maximum confinement of twenty years. *See* TEX. PENAL CODE ANN. § 12.33(a) (West 2011).

The trial court denied Dominguez's request to make the finding of voluntary safe release, and instead assessed punishment within the first-degree felony range, stating: "So I will refrain from making the finding that [defense counsel] has asked. That is an appellate point. He's asked for it, it's denied."

**A.    Voluntary Release Under Texas Penal Code Section 20.04(c)**

Aggravated kidnapping is a first-degree felony punishable by a term of imprisonment between five years to life. *Id.* § 20.04(c), 12.32(a). Section 20.04(d) provides: "At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* § 20.04(d); *accord Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998). A second degree felony is punishable by a term of imprisonment between two and twenty years. TEX. PENAL CODE ANN. § 12.33(a).

*1.    Defendant's Burden of Proof*

The statute requires the defendant to prove voluntary release in a safe place by a preponderance of the evidence, a lesser standard of proof than is required during the guilt-innocence phase of a criminal trial. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). To satisfy this standard, the defendant must create, by the greater weight of the credible evidence, a reasonable belief that the defendant voluntarily released the victim in a safe place. *See Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974).

*2.    Standard of Review*

Dominguez's sufficiency claim is evaluated for both legal and factual sufficiency. *See Butcher v. State*, No. PD-1662-13, 2015 WL 359087, at *5 (Tex. Crim. App. Jan. 28, 2015) ("Affirmative defenses may be evaluated for legal and factual sufficiency, even after this Court handed down its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)."). "In a legal-sufficiency review of an affirmative defense, reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *Id.* (citing *Matlock v. State*, 392 S.W.3d 662, 669–70 (Tex. Crim. App. 2013)). The finding of the factfinder rejecting a defendant's affirmative

defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and "no reasonable [factfinder] was free to think otherwise." *Id*. (citing *Matlock*, 392 S.W.3d at 670).

"In a factual-sufficiency review of a finding rejecting an affirmative defense, and unlike in a legal-sufficiency review, courts examine the evidence in a neutral light." *Id*. (citing *Matlock*, 392 S.W.3d at 671). "A finding rejecting a defendant's affirmative defense cannot be overruled unless, 'after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.'" *Id*. (citing *Matlock*, 392 S.W.3d at 670).

### 3. *Evidence Required by Defendant*

Section 20.04 requires proof the accused "performed 'some overt and affirmative act' which brought home to his victim that she had been 'fully released from captivity.'" *Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "That release must have occurred in a place and manner which realistically conveyed [to the victim] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Id*.; *accord Woods v. State*, 301 S.W.3d 327, 331 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The term "voluntarily" in section 20.04(d) is interpreted narrowly to mean the absence of "'rescue by the police [or others] or escape by the [kidnap] victim.'" *Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003).

Factors to consider in determining whether the defendant released the victim in a safe place include the following:

(1)     the remoteness of the location;
(2)     the proximity of authorities or persons who could aid or assist;
(3)     the time of day;
(4)     climatic conditions;
(5)     the condition of the victim;

      (6)      the character of the location or surrounding neighborhood; and

      (7)      the victim's familiarity with the location or surrounding neighborhood.

*Woods*, 301 S.W.3d at 331–32; *accord West v. State*, 406 S.W.3d 748, 766 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.—Dallas 1996, pet. dism'd).

## B.      Arguments of the Parties

Dominguez argues that the trial court should have made the safe release finding because the evidence shows that (1) the location where the complainant was released was not remote; (2) there was a telephone in the motel room and a pizza place nearby; (3) it was not a dangerous hour; (4) it was a warm January afternoon; (5) the complainant was uninjured; (6) the motel was located in a "well built up neighborhood" near a children's shelter, a shopping center, and a pizza place; (7) and the complainant knew that she was at a motel in San Antonio, and was able to direct her sister to come get her.

The State counters that Dominguez did not release D.P., but rather abandoned her in the motel room. The State does not contend that Dominguez acted involuntarily, and we agree that the record is devoid of any evidence indicating that Dominguez involuntarily left the motel at the urging of police or any other individual. *See Brown*, 98 S.W.3d at 188 (narrowly defining "voluntarily" as the absence "of rescue by the police [or others] or escape by the [kidnap] victim").

Although Dominguez argues that the girls voluntarily accompanied him to the motel, Dominguez does not appeal the sufficiency of his kidnapping conviction. Our analysis, therefore, is limited to whether the trial court erred in (1) failing to find Dominguez voluntarily released D.P. in a safe place and (2) subjecting Dominguez to the first-degree penalty range of punishment.

**C.      Evidence Adduced at Trial**

D.P. testified that she accepted Dominguez's request to meet her and a friend at the post office near her friend's house. After leaving the post office with Dominguez, the three visited D.P.'s friend's boyfriend's house, and Dominguez drove the girls to a motel where he sexually assaulted D.P. After the assault, D.P. joined her friend in the bathroom and locked the door.

Both parties agree that Dominguez knocked on the bathroom door and told D.P. that he was leaving, and it is undisputed that Dominguez left the motel. After falling asleep in the bathroom for approximately thirty minutes, D.P. exited the bathroom and began making calls on the telephone located in the motel room. Her sister agreed to come pick up the girls, but neither D.P. nor her friend knew where the motel was located. The girls ultimately ended up running to a Pizza Hut where they called D.P.'s sister and provided her with an address for their location.

Approximately five days after the alleged assault, police questioned Dominguez. Dominguez's own testimony refutes his contention that he released D.P. Specifically, a video-recorded interview of Dominguez was played for the jury wherein Dominguez, *in his own words*, contradicts the elements required to prove the affirmative defense of voluntary release.

After being *Mirandized*, Dominguez explained to the officer that he picked up D.P. and her friend because "they needed rides." *At their request*, Dominguez claims he took the girls to the friend's boyfriend's house. But when the boyfriend did not want the girls at his house, and Dominguez was late for an appointment to get plasma, he had no option but to take the girls to the Sahara Motel.

Dominguez testified that he instructed the girls to stay in the room. "I told them you have to stay here unless y'all want to wait [at the plasma center] in the car for two hours. So they said OK." After approximately twenty minutes, and after he sexually assaulted D.P., Dominguez left for his appointment. Dominguez further explained that he told the girls that *he would be back* and

"left them cigarettes and a lighter." Dominguez claimed to be surprised when he returned to the motel and the girls were gone and told the officer that he "didn't know what happened." Dominguez was adamant that, before he left, he told the girls that he would bring back food.

As further evidence of Dominguez's intent that D.P. was to remain in the motel room, Dominguez told the officer that he called the room twice to see what the girls wanted to eat, but they did not answer. Dominguez was resolute that "they were happy. I was going to come back with food."

## C.    Analysis

To satisfy the voluntary release provision, Dominguez was required to bring forward some evidence that he voluntarily released D.P. in a safe place. *See West*, 406 S.W.3d at 766 (citing *LaHood v. State*, 171 S.W.3d 613, 624–25 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)); *see also Ballard v. State*, 161 S.W.3d 269, 273 (Tex. App.—Texarkana 2005) ("[T]he application of Section 20.04(d) should focus on whether the defendant performed an act of release . . . ."), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006). To be voluntary, however, "the release must not have been occasioned by . . . escape by the victim." *LaHood*, 171 S.W.3d at 624 n.5 (citing *Brown*, 98 S.W.3d at 183–88); *accord Ballard v. State*, 193 S.W.3d 916, 919 (Tex. Crim. App. 2006).

"[I]n order to avail himself of the mitigating effect of § 20.04(b), [Dominguez] must have performed some overt and affirmative act that [brought] home to [D.P.] that [she had] been fully released from captivity." *Wiley v. State*, 820 S.W.2d 401, 411 (Tex. App.—Beaumont 1991, no pet.); *accord Ballard*, 193 S.W.3d at 919; *Ex parte Chandler*, 182 S.W.3d 350, 355 & n.18 (Tex. Crim. App. 2005); *Harrell*, 65 S.W.3d at 772; *see also Gaither v. State*, No. 04–10–00548–CR, 2011 WL 3915820, at *4–5 (Tex. App.—San Antonio Sept. 7, 2011, no pet.) (mem. op., not designated for publication) (holding that appellant was not entitled to "safe release" instruction where there was no evidence that appellant "took any affirmative act to *release* " the victim). In

other words, Dominguez had to release D.P. in a "manner which realistically conveyed to [D.P.] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Harrell*, 65 S.W.3d at 772. Courts have further explained that a victim's escape from captivity does not entitle a defendant to an instruction on the issue of voluntary release. *Ex parte Chandler*, 182 S.W.3d at 355 & n.18; *Cooks v. State*, 169 S.W.3d 288, 291 (Tex. App.—Texarkana 2005, pet. ref'd); *Harrell*, 65 S.W.3d at 772–74.

This case turns on whether Dominguez committed an "overt and affirmative act" which brought home to D.P. that she was "fully released from captivity." *See Harrell*, 65 S.W.3d at 772. D.P. testified that Dominguez said, "That he's going to leave now, that he's leaving us there." She agreed that he "knocked [on the bathroom door] and says, Hey, I'm leaving and takes off." She then stated that she cried with her friend and that she "fe[l]l asleep for like 30 minutes. And then I woke up and we went back out into the room where the phone was. And [my friend] sat on the sofa near the bed and I sat on the bed and I started calling everybody that I knew that could come pick us up." After making contact with her sister, D.P. and her friend then "ran to Pizza Hut," where they again called her sister to pick them up.

In *Ballard v. State* (*Ballard I*), 161 S.W.3d 269 (Tex. App.—Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006), the defendant kidnapped his ex-girlfriend, and forced her, at gunpoint, "to accompany him to his house, had admittedly consensual sex with her, and then asked her to accompany him in a car on a local bill-paying trip—even leaving her alone in the passenger seat of the car two times during the trip while he went into businesses to pay bills." *Id*. at 270. The two later returned to the defendant's house, where the police eventually arrived. *Id*. at 275. On appeal, the defendant argued that he was entitled to the safe release defense because "he voluntarily released [the victim] in a safe place within the meaning of the statute because he left her alone in the car, twice, giving her the power to escape." *Id*. at 272.

- 13 -

The *Ballard I* court noted that even though the victim could have safely driven away, the evidence indicated that the defendant intended to return to the car *momentarily*, that he knew how to find the victim later had she driven off, and that the defendant had some continuing power over the victim during the time he left to run his errands. *Id.* at 276. Further, the kidnapping did not cease until the police intervened, meaning that the defendant did not commit an overt and affirmative act to release the victim. *Id.* at 275; *see also Brown*, 98 S.W.3d at 188 (holding action cannot be voluntary where element of rescue by police exists). Thus, the *Ballard I* court held that the evidence was legally sufficient to support the trial court's determination that the appellant did not commit an overt and affirmative act; and, therefore, the appellant did not voluntarily release the victim. *Ballard I*, 161 S.W.3d at 275.

The Court of Criminal Appeals rationale in *Ballard II* is instructive. *Ballard v. State* (*Ballard II*), 193 S.W.3d 916, 919 (Tex. Crim. App. 2006). The *Ballard II* court held that even though the victim "thought she was free to go and no longer felt as though she was in danger[,] . . . such actions by the kidnapper did not constitute the voluntary release of the victim in a safe place." *Id.* at 919–20. Here, although D.P. and her friend both used the phone and left the motel room, these actions are more consistent with escape rather than voluntary release. *See id.* at 919–20; *see also Ex parte Chandler*, 182 S.W.3d at 355 & n.18; *Cooks*, 169 S.W.3d at 291 (requiring release without any element of escape by victim); *Harrell*, 65 S.W.3d at 772 (explaining that defendant's absences from the room were not overt and affirmative acts).

The record simply does not contain any evidence that D.P.'s freedom was the result of any overt or affirmative act by Dominguez, or even that Dominguez intended to release D.P. The record contains more than a scintilla of evidence that Dominguez did not voluntarily release D.P. *Butcher*, 2015 WL 359087, at *6. We, thus, conclude the trial court properly concluded the evidence was legally insufficient to support Dominguez's claim that he voluntarily released D.P.

We also conclude, considering all of the surrounding circumstances, there is ample evidence that the trial court could have reasonably concluded Dominguez did not voluntarily release D.P. *Id.* We cannot say the trial court's rejection of Dominguez's affirmative defense is "'against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.'" *Id*. (quoting *Matlock*, 392 S.W.2d at 671).

Accordingly, we overrule Dominguez's last issue on appeal.

### CONCLUSION

Having overruled all of Dominguez's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH