

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00168-CR

LEON HILL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR14-313

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Leon Hill, convicted of aggravated sexual assault of a child,[1] the four- or five-year-old Aloree,[2] and sentenced to life in prison, attacks on appeal the sufficiency of the evidence, the admission of evidence of a prior conviction, and the admission of a claimed repressed memory. We affirm the judgment, because (1) sufficient evidence supports Hill's conviction, (2) the trial court properly admitted evidence of a prior conviction, and (3) nothing in the record suggests that complainant's accusation was a repressed memory.

### (1)	Sufficient Evidence Supports Hill's Conviction

Hill claims that the evidence was not legally sufficient to support his conviction. We disagree.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). In examining legal sufficiency, we give deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v.*

---

[1]*See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2015).

[2]We refer to the complainant and any other child witness by a pseudonym. For example, Aloree's half-siblings are referred to as Mark and Sophia. *See* TEX. R. APP. P. 9.10   Likewise, we use initials or first names for some relatives, in an abundance of discretion.

2

*State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. at 240.

Hill married Aloree's mother, Diane, who was Clyde's niece. When Aloree was about seven, Clyde started picking her up after school, from either the school or from WalMart, where Diane worked. Clyde had a granddaughter close to Aloree's age, which made the arrangement convenient. One day, about two years into this arrangement, Clyde felt something was "different" about Aloree[3]—"She was looking different. She was like in distress." He asked her if anyone had

---

[3]There is a suggestion in the record that Aloree was exhibiting a strange smell related to personal hygiene. The State alluded to this in opening argument, and Clyde was asked about it at this point in questioning. The State asked:

> Q.     [By the State]  Was there anything -- had there been developing anything unique about the way she smelled or didn't smell?
>
> A.     [By Clyde]  I didn't pay it that much attention at that time.
>
> Q.     Okay.  Would that come out later on?
>
> A.     Yes, sir.

The State never followed up on this topic. The Sexual Assault Nurse Examiner (SANE) who examined Aloree testified that the girl presented with an "unusual bacteria" the nurse had never before encountered. There was testimony suggesting Aloree had bacterial vaginosis, for which she took medicine for two weeks. The SANE also testified that Aloree had been initially reported to have some kind of vaginal discharge. None of these appear connected to the alleged abuse from four years earlier.

touched her. Aloree indicated that someone had, and she identified Hill. According to Clyde, Aloree told him generally what Hill had done. Clyde did not relate specifics, but said the nine-year-old told him enough detail to convince him it really happened. In the process, she told him "some things that a 9-year-old . . . wouldn't have known unless it did happen." Aloree told Clyde that she had told her mother about the event, but that her mother did not believe her. Clyde reported Aloree's allegation to Child Protective Services. This led to a rift in the family, as Diane, Aloree's mother, and Dora, Diane's mother and Clyde's sister, continued to disbelieve the child and thought Clyde should not have reported the matter.

Aloree, at age ten, testified at Hill's trial. According to Aloree, although Hill married her mother, he did not always live with the family. Aloree testified that, one evening when she was five, Hill was staying with the family, and she was in the living room with Mark and Sophia, Hill picked Aloree up and took her into Mark and Sophia's room, telling Mark and Sophia he was taking Aloree in there so she could sleep. There he disrobed, took off Aloree's pants, and started "raping" Aloree. She described the sex act as Hill lying on her on the bed, "putting his stuff on mine" and putting "[h]is middle part on [her] middle part."[4] She explained that the "middle part" for females and males, respectively, is the place from which they would urinate. She testified she remembered feeling "[h]air on his middle part." She further described Hill as "humping" her, that is, Hill "[g]oing up and down with his middle part in mine." Hill put his hand on her mouth to keep her from screaming, and she could not breathe. When through, Hill put her pants back on

---

[4]Children often do not describe acts with anatomical precision. "Where the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within [the Penal Code's definitions,] the evidence will be sufficient to support a conviction regardless of the unsophisticated language that the child uses." *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977).

4

her, and Aloree returned to the living room. Aloree said that Mark and Sophia noticed her pants were unzipped, but, being frightened, she did not then tell them what had happened.

Mark and Sophia corroborated part of Aloree's testimony. Both said Hill picked their half-sister up in the living room and took her to a bedroom. Mark said he could hear the bed shaking in the room where Hill had taken Aloree; and both siblings testified that Aloree's pants were unzipped when she came back to the living room. Eventually Aloree told her half-siblings about Hill's assault, and the children told their mother, who did not believe them. From the record, it appears that Aloree told nobody else until Clyde questioned her about it four years later.

The day after Aloree confided her allegations to Clyde, she was taken for a sexual assault examination. The nurse, Susan Camazine, said Aloree's labia majora was "very, very red," and the child experienced pain when Camazine touched it. This did not appear to be related to the alleged abuse. Camazine testified that Aloree described the sexual assault and that Camazine's findings, including no damage to the young girl's hymen, were consistent with the history Aloree provided.[5]

The evidence was sufficient to allow a rational jury to find all the elements of aggravated sexual assault of a child to be true beyond a reasonable doubt. We overrule Hill's challenge to the sufficiency of the evidence.

---

[5]It is not clear if the State intended to offer testimony from Camazine or Clyde about Aloree's description of the sexual assault under the auspices of Article 38.072 of the Texas Code of Criminal Procedure. *See* TEX. CRIM. PROC. CODE ANN. art. 38.072 (West Supp. 2015). We have not found a notice of such intent in the record, but neither witness related statements made to them by Aloree, other than those summarized above.

*(2)      The Trial Court Properly Admitted Evidence of a Prior Conviction*

Hill criticizes the admission of evidence of a conviction from 2002 for an offense of aggravated sexual assault of a child committed in 1997. Hill assails the evidence of the prior conviction on three bases: (a) an alleged violation of his due-process rights,[6] (b) allegedly faulty Rule 403 balancing by the trial court, and (c) an alleged violation of the statute under which the conviction was admitted.

*(a)      No Due-Process Rights*

Article 38.37 of the Texas Code of Criminal Procedure allows, in certain situations, admission of evidence that a defendant has previously committed another offense in the same category as the primary offense for which the defendant is being tried:

> (b)      Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2015). Hill argues that admitting the extraneous offense as authorized by Section 2(b) violates his due-process rights. Our sister court addressed this argument in *Belcher v. State*, 474 S.W.3d 840, 843–44 (Tex. App.—Tyler 2015, no pet.). Like the appellant in *Belcher*, Hill premises his due-process rights on the "well established and fundamental principle in our system of justice that an accused person must be tried only for the offense charged and not for being a criminal (or a bad person) generally." *Templin v. State*,

---

[6]Hill argues his due-process rights, point of error 1, and his Rule-403-balancing-test complaint, point of error 2, together. Because we find these are discrete issues, we address them independently.

6

711 S.W.2d 30, 32 (Tex. Crim. App. 1986). "The ban against propensity evidence in our jurisprudence is over three hundred years old dating back to seventeenth century cases." *Belcher*, 474 S.W.3d at 844. While there is an inherent danger in the admission of evidence of extraneous bad acts or offenses simply to demonstrate character conformity, "child sex abuse cases present evidentiary problems not resolved by any of the extraneous bad acts exceptions in [Rule] 404" of the Texas Rule of Evidence. *Id*. at 845.

*Belcher*'s historical survey recounted the development of a lustful-disposition exception to the rule against propensity evidence in statutory rape cases. *Id.* A version of the rule was adopted in Texas. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 48(a), 1995 Tex. Gen. Laws 2734, 2748–49 (amended 2005, 2011, 2013). In 2013, the Texas Legislature amended Article 38.37, yielding the current version, including Section 2, which was used in Hill's trial. *See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, §1, 2013 Tex. Gen. Laws 1167, 1167–68 (current version at TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2015)). Section 2 allows

> evidence that the defendant has committed a separate offense described by [several enumerated offenses, including indecency with a child; sexual assault of a child; and aggravated sexual assault of a child] in the trial of an alleged offense [i.e. those same enumerated offenses] for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2. As observed by *Belcher*, Article 38.37 is worded differently that Rule 414(a) of the Federal Rules of Evidence,[7] but the two "have virtually the same

---

[7]"In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." FED. R. EVID. 414(a).

effect." *Belcher*, 474 S.W.3d at 846. "Both make admissible evidence of the defendant's other sex crimes against children other than the complainant in order to show his propensity to commit the act of child sexual abuse alleged." *Id*. However, a prior sexual offense against a child must still survive a Rule 403 balancing test. *Id.* at 847; *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd). Notably, *Belcher* found that Section 2(b) does not violate an accused's due-process rights and that the statute is constitutional. *Belcher*, 474 S.W.3d at 847.

We find our sister court's reasoning persuasive. As *Belcher* pointed out, Federal Rule 414 and Section 2(b) of Article 38.37 are all but indistinguishable in substance and effect, and both anticipate, or at least are constrained by, their respective Rule 403s, which protect the defendant's due-process rights by requiring a balancing of probative value against the danger of unfair prejudice that might otherwise deprive a defendant of a fair trial. "The policy concerns that served to justify the federal decision to admit propensity evidence in child molestation cases are equally applicable to state prosecutions." *Id.*

Hill has not argued or provided any authority to undermine the reasoning of *Belcher*. Hill cites and quotes several United States Supreme Court cases discussing the general preclusion of propensity or character conformity evidence, but none of these cases involved sexual assault of children, and the Texas cases he cites predate the enactment of Article 38.37, Section 2(b). Hill's authority thus does not take into consideration the unique "evidentiary problems"[8] in many

---

[8]*See Belcher*, 474 S.W.3d at 845.

prosecutions for sexual assault of children or the history and analysis presented in *Belcher*. We overrule Hill's due-process rights.[9]

### (b) No Rule-403 Problem

As part of his due-process rights, Hill claims that the trial court erred in balancing the probative value of evidence of Hill's prior conviction against the danger that such evidence could be unfairly prejudicial. Evidence may be excluded where the "probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403;[10] *see Montgomery v. State*, 810 S.W.2d 372, 388–90 (Tex. Crim. App. 1990) (op'n on reh'g). "In reviewing the trial court's balancing test determination, a reviewing court is to reverse the trial court's judgment 'rarely and only after a clear abuse of discretion.'" *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 389). "Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Id.* (quoting *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992)). "It is therefore the objecting party's burden to show that the probative value is substantially outweighed by the danger of unfair prejudice." *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

---

[9]*See also Dominguez v. State*, 467 S.W.3d 521, 525 (Tex. App.—San Antonio 2015, pet. ref'd), finding no ex post facto violation where Dominguez indicted before Article 38.37's effective date and the statute was applied at his trial.

[10]The Rule also allows for exclusion if the "probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Hill's arguments at trial and on appeal focus on the danger of unfair prejudice.

9

The balancing test of Rule 403 centers on four main, non-exclusive factors:

(1) how compellingly the evidence serves to make a fact of consequence more or less probable . . . ; (2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence; and (4) the force of the proponent's need for this evidence to prove a fact of consequence.

*Taylor v. State*, 93 S.W.3d 487, 506 (Tex. App.—Texarkana 2002, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 389–90); *see Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). While the fact of the prior offense is so-called propensity evidence that does not directly implicate Hill's guilt on this offense, the Legislature has decided that, in this type of case, propensity evidence that is probative is admissible unless it fails the balancing test of Rule 403. *Bradshaw*, 466 S.W.3d at 883. "[T]he plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Exclusion of such evidence under Rule 403 is to be the exception where, otherwise, the case boils down to a "he said, she said" situation in a case of sexual assault. *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009); *Bradshaw*, 466 S.W.3d at 883–84. Here, the evidence is probative in that it tends to support the credibility of the victim. This favors admission.

In the context provided, we do not conclude that this evidence had the potential to impress the jury in an indelible or irrational way. The circumstances and lurid details of the prior offense were not presented to the jury—and not much time was taken to prove, introduce, and present the evidence of the prior conviction. The State mentioned it briefly in its opening argument, as part of its summary of the intended evidence and how Hill became a suspect. In its first section of its

10

closing argument, the State mentioned the prior conviction one time, reminding the jury of the evidence that Hill had perpetrated the same offense before Aloree had even been born, but spent the rest of its argument summarizing the evidence. In rebuttal argument, the prior offense was mentioned only in the context of Aloree's vulnerability where her mother brought a previously convicted sexual abuser of children into the home. The rest of the State's rebuttal assailed the defensive theories and emphasized the evidence supporting Aloree's allegations. This factor is neutral.

The relatively brief time spent developing the evidence of the prior offense weighs in favor of admission. The State's last witness was a detective who matched Hill's fingerprints from his prior conviction to the fingerprints taken by the detective the morning of trial.

The State did have some need of this evidence. While the testimony of a child victim is enough to support conviction,[11] Aloree testified in language consistent with a ten-year-old child. The fact Hill had previously been convicted for the same offense lends credence to the possibility of his having committed the instant offense as alleged. This factor weighs in favor of admissibility.

We find the trial court did not abuse its discretion in weighing the considerations under Rule 403 and admitting the evidence.[12]

---

[11]*See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2015); *Allen v. State*, 436 S.W.3d 815, 820 (Tex. App.—Texarkana 2014, pet. ref'd).

[12]Hill also argues that the indictment for the prior conviction shows that the crime was digital penetration of that victim's vagina, while here Hill was charged with penile penetration. This is of no consequence, as Article 38.37, Section 2, requires only that the accused has "committed a separate offense" in delineated categories, one of which is sexual assault of a child.

*(c)      No Statutory Violation Appears*

Hill complains that evidence of the prior conviction was not admissible because the victim of that offense was not the same victim as in the instant case.  Hill's argument is built on Article 38.37, Section 1, which allows evidence of other offenses or bad acts committed by the defendant against the "victim of the alleged offense."  TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1.  The evidence in this case was offered and admitted under Article 38.37, Section 2, which, as quoted above, allows admission of a previous, enumerated offense, here aggravated sexual assault of a child, at the trial of one of those enumerated offenses.

Hill does not argue or explain how the proffered evidence was inadmissible under Article 38.37, Section 2(a).  We overrule this point of error.

*(3)      Nothing in the Record Suggests that Complainant's Accusation Was a Repressed Memory*

Hill also claims that his conviction was based on a repressed memory and that there is insufficient scientific data to support testimony based on such memory.  There is nothing in the record suggesting that Aloree's accusation was a repressed memory that returned to consciousness years later.  She testified, in her own age appropriate language, that Hill sexually assaulted her when she was five years old.  She testified that she was frightened.  She said she told her mother, who did not believe her.  Her great-uncle Clyde testified that other family members did not believe the young girl and that they felt Clyde was wrong to alert law enforcement.  There is nothing suggesting this was a repressed memory on Aloree's part.  Considering the assembled testimony of Aloree, Mark, Sophia, and Clyde, there is a reasonable inference that, after her initial report was disbelieved by her own mother, the child felt any other outcry would be fruitless.  The fact that she

12

did not discuss the incident for four years does not show she had a repressed memory. There being no basis at all in the record supporting this claim, we overrule it.[13]

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 28, 2016
Date Decided:       June 17, 2016

Do Not Publish

---

[13]Hill cites *Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010), a case where a deputy's use of bloodhounds to smell paint cans, one of which had

> scent samples from clothing that the victim was wearing at the time of his death and from six white males, including appellant. The dogs were "pre-scented" on the scent samples obtained from the victim's clothing. The dogs then walked a line of paint cans containing the scent samples of the six white males. All three dogs alerted on the can containing appellant's scent sample.

*Id.* at 877. The Texas Court of Criminal Appeals found the evidence insufficient to support conviction. We do not find that case or its reasoning analogous to the case at bar.

13