

# NUMBER 13-17-00180-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DANIEL OSCAR GOMEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION
### Before Justices Benavides, Longoria, and Hinojosa
### Memorandum Opinion by Justice Benavides

By his sole issue, appellant Daniel Gomez challenges his conviction for indecency

with a child by sexual contact, a second-degree felony. *See* TEX. PENAL CODE ANN. §

21.11 (West, Westlaw through 2017 1st C.S.). Gomez alleges the trial court abused its

discretion by allowing in the testimony of B.G.[1] under article 38.37 of the code of criminal

---

[1] In order to protect the complainant's identity, we will use her initials and the initials of her family

procedure and rule 403 and 404(b) of the rules of evidence during the guilt-innocence phase of the trial. *See* TEX. R. EVID. 403, 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.37 (West, Westlaw through 2017 1st C.S.). We affirm.

## I.   BACKGROUND

Gomez was charged by indictment on four counts: two counts of aggravated sexual assault of a child, D.G., a first-degree felony, and two counts of indecency with a child by sexual contact with D.G. *See* TEX. PENAL CODE ANN. §§ 22.011, 22.11 (West, Westlaw through 2017 1st C.S.). Counts one through three were disposed of in a prior trial.[2] The State elected to re-try Gomez on count 4, indecency with a child by sexual contact. *See id.* § 22.11. D.G. testified at trial regarding the indecency with a child, stating that she awoke to Gomez lying next to her, with his hands on her body, and she felt his male sex organ on her lower back.

Prior to trial, the State provided notice to Gomez of its intent to call a second victim, B.G., as a witness under article 38.37 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (providing that evidence of extraneous offenses or acts may be admissible in the prosecution of a defendant for certain sexual abuse offenses). The State also indicated that it would offer into evidence one of the prior alleged assaults on B.G. through her testimony under rules of evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b). At trial, the State called B.G. as a rebuttal witness to testify regarding her

---

members throughout this memorandum opinion. *See generally* TEX. R. APP. P. 9.8.

[2]   The State abandoned count 1, the trial court granted a directed verdict on count 2, and Gomez was acquitted by a jury on count 3. The jury was unable to come to a verdict on count 4 and the trial court granted a mistrial. The State re-tried Gomez on count 4 in this pending action.

allegations of previous sexual abuse against Gomez.[3]  The trial court conducted a hearing outside of the presence of the jury to evaluate the admissibility of B.G.'s testimony.

### A.     Article 38.37 Hearing

During the hearing to determine if the article 38.37 testimony should be admitted, B.G. testified about three separate incidents of abuse:  one at a home on Rosebud Avenue (Rosebud), one on Warren Street (Warren), and one on Melrose Avenue (Melrose).   B.G. made her initial outcry to a school counselor and was taken for a forensic interview at Hope Center of South Texas, a local child advocacy center, as well as a sexual assault nurse examination.

B.G. testified that Gomez first digitally penetrated her female sex organ at the home on Rosebud.   B.G. explained that she was asleep on a fold-out bed in the living room and woke to Gomez's hand under her pants and inside her female sex organ.   She stated that when he stopped, Gomez apologized, told her not to say anything, and that her "mother would kill him, kill us, she'll hate us" if she found out.   Regarding the incident on Warren, B.G. relayed that she awoke to Gomez rubbing her thigh with his male sex organ over her clothing.[4]   Regarding the third incident which occurred on Melrose, B.G. stated she awoke to Gomez penetrating her female sex organ with one hand, while masturbating with his other hand.   B.G. explained that her mother was lying in between

---

[3]   Gomez had previously been brought to trial on allegations of sexual abuse regarding B.G. and was acquitted of those charges.   *See* TEX. PENAL CODE ANN. § 22.011 (West, Westlaw through 2017 1st C.S.).

[4]   The previous trial in which B.G. was the complaining witness involved a separate incident involving penetration at Warren.

them but had been consuming alcohol previously.

Following B.G.'s testimony, the State argued that although there was a prior trial regarding a sexual incident on Warren between Gomez and B.G., that incident involved penetration of B.G.'s sexual organ, and the incident B.G. testified to presently did not involve penetration. Therefore, the State alleged there was no collateral estoppel related to the Warren incident B.G. discussed and it should be admitted into evidence. The State also discussed the Rosebud incident and acknowledged that it was not listed on its article 38.37 notice but argued that the incident would be admissible under rule 404(b), instead of article 38.37. *See* TEX. R. EVID. 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.37. According to the State, Gomez did not request notice under rule 404(b) and in the alternative, the State would present the evidence in response to a defensive theory. As to rule 403, the State claimed the evidence B.G. would present was more probative than prejudicial, but it has the right to bring evidence of prior sexual incidents with B.G. under article 38.37. *See* TEX. R. EVID. 403; TEX. CODE CRIM. PROC. ANN. art. 38.37.

Gomez responded by arguing that the allegations B.G. discussed were presented in the previous trial in which Gomez was acquitted and would be overly prejudicial. Additionally, Gomez stated that B.G. relayed information regarding penetration of her sexual organ, where the complainant here, D.G., relayed information regarding an indecency with a child and those offenses are substantially different. Gomez also argued that the facts being presented had already been presented to a jury in B.G.'s trial and the issues were determined by a jury in which he was acquitted.

The trial court ruled that the Warren and Melrose incidents are "somewhat similar,"

4

and it admitted those under article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. The trial court ruled the Rosebud incident fell under rule 404(b), was relevant to rebut a defensive theory, and the probative value outweighed the prejudicial nature of the testimony. *See* TEX. R. EVID. 403.

### B. Trial Testimony

In front of the jury, B.G. testified with similar detail to the article 38.37 hearing. She described the Rosebud incident stating Gomez penetrated her female sex organ with his fingers. She then described the Warren incident where she awoke to Gomez's uncovered male sex organ touching her thigh over her clothing. B.G. then explained the incident on Melrose stating that she awoke to Gomez penetrating her female sex organ with his fingers, while using his other hand to masturbate his uncovered male sex organ. B.G. said she stopped Gomez by grabbing his hand and twisting it and that her mother was lying in between her and Gomez. B.G. discussed she made an outcry to her school counselor and that law enforcement officers requested the pair of underwear she wore the night of the Melrose incident.

On cross-examination by Gomez's counsel, B.G. testified about her previous trial testimony, specifically the offense the previous trial centered around. Gomez was previously tried for penetration of B.G.'s female sex organ on Warren. B.G. had an abortion following the incident according to her testimony. Gomez questioned B.G. regarding the incident on Warren she was now alleging and stated that she did not discuss it in the prior trial. Although B.G. agreed the current Warren incident was not discussed at the previous trial, she stated that she had discussed it during her forensic interview.

5

Gomez also questioned B.G. regarding any other motivation she had to report these alleged assaults and discrepancies in her statements: the initial outcry to her school counselor, the statement to the forensic interviewer, and to some extent, the prior trial. B.G. testified that she did not initially give specific details to her school counselor but expanded her description of the events when she met with the forensic interviewer. Based on the nature of Gomez's questions, and after hearing substantial argument from the parties, the trial court allowed B.G.'s forensic interview to be played for the jury in its entirety.

Following additional testimony from other witnesses, the jury found Gomez guilty of indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 21.11. The trial court sentenced Gomez to twenty years' imprisonment in the Texas Department of Criminal Justice–Institutional Division and a $20,000 fine. This appeal followed.

## II. NO ERROR IN ADMISSION OF EXTRANEOUS OFFENSES UNDER ART. 38.37

By his sole issue, Gomez argues that the trial court committed error by allowing the admission of extraneous offenses under Texas Code of Criminal Procedure article 38.37 and Texas Rule of Evidence 403. *See* TEX. R. EVID. 403; TEX. CODE. CRIM. PROC. ANN. art. 38.37.

### A. Standard of Review

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the

6

trial court's ruling will be upheld. *Prible*, 175 S.W.3d at 731.

When evidence of a defendant's commission of one of the offenses listed in article 38.37, article 2-a is relevant under article 38.37, the trial court still must conduct a rule 403 balancing test upon proper objection or request. *McCombs v. State*, No. 14-17-00214-CR, ___S.W.3d___, 2018 WL 5260983, *12 (Tex. App.—Houston [14th Dist.] Oct. 23, 2018, no pet.). When reviewing a trial court's ruling on a rule 403 objection, we presume the trial court performed a rule 403 balancing test and determined the evidence was admissible. *Id.* We also presume that the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admission of that evidence. *Id.* Appellant must shoulder the burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Id.*

The Texas Court of Criminal Appeals has cautioned that in reviewing a trial court's rule 403 balancing determination, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Id.* (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)).

## B. Applicable Case Law

### 1. Article 38.37

Texas Code of Criminal Procedure article 38.37, section 2(b) provides that, notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) [sexual based offenses] may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.[5]

---

[5] As noted in *Belcher v. State*, the 2013 amendment to article 38.37 has caused the rule to be in line with the Federal Rule of Evidence 414, which both allow evidence of a defendant's other sex crimes

TEX. CODE. CRIM. PROC. ANN. art. 38.37, § 2(b); *see Dominguez v. State*, 467 S.W.3d 521, 525 (Tex. App.—San Antonio 2015, pet. ref'd).   The State must provide the defendant with notice of its intent to introduce such evidence not later than thirty days before the date of trial.   TEX. CODE. CRIM. PROC. ANN. art. 38.37, § 3.   For such evidence to be admitted, the trial court must rule it admissible after a hearing outside the presence of the jury to "determine that evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt."   *Id.* § 2-a; *see also Chaisson v. State*, No. 13-16-00548-CR, 2018 WL 1870592, *6 (Tex. App.—Corpus Christi Apr. 19, 2018, no pet.) (mem. op., not designated for publication).

### 2.      Rule 403

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice" among other things.   TEX. R. EVID. 403.   In determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, we consider:   (1) "the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).   "'Probative value' refers to the inherent probative force of an item of evidence–that is, how strongly it serves

---

against children to be admissible in order to show a propensity to commit the act of child sexual abuse alleged.   474 S.W.3d 840, 846–47 (Tex. App.—Tyler 2015, no pet.); *see also Robisheaux v. State*, 483 S.W.3d 205, 211 (Tex. App.—Austin 2016, pet. ref'd).

to make more or less probable the existence of a fact of consequence to the litigation–coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis–commonly, though not necessarily, an emotional one." *Id.* In sum, a trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.* at 641–42. An appellate court presumes that the probative value will outweigh any prejudicial effect. *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (en banc) (op. on reh'g).

### C.    Discussion

Gomez argues the trial court abused its discretion by admitting evidence of prior extraneous sexual offenses. During trial, the trial court conducted a hearing, outside the presence of the jury, to determine if the testimony of B.G. would support a finding that Gomez committed those offenses beyond a reasonable doubt. *See* TEX. CODE. CRIM. PROC. ANN. art. 38.37, § 2-a. Gomez did not complain in the trial court and does not argue on appeal that the trial court failed to comply with article 38.37, section 2-a, that the trial court erred in applying article 38.37, section 2 to the evidence of extraneous sexual

9

assaults of B.G., or that the evidence of the extraneous sexual assaults of B.G. were not relevant under article 38.37, section 2.   Thus, we presume without deciding, that the trial court complied with the dictates of article 38.37, section 2, and the evidence presented was relevant.   *See id.*   Gomez argued that the introduction of the evidence violated rule 403.   *See* TEX. R. EVID. 403; *see McCombs*, 2018 WL 5260983, at *11.

**1.      Probative Value of Evidence and Strength of Need for the Evidence**

The probative value factor of a rule 403 analysis requires us to consider the strength of the extraneous offense evidence to make a fact of consequence more or less probable.   *See Davis v. State*, 329 S.W.3d 798 (Tex. Crim. App. 2010).   B.G.'s testimony served the purpose of article 38.37 in this type of offense:   to permit the jury to consider the character of Gomez and demonstrate that he had performed such acts on a similarly situated person.   B.G. and D.G. were both young relatives, his daughter and granddaughter respectively, present in Gomez's home, giving him access to perform the alleged acts.   The State demonstrated a need for the extraneous offense testimony from B.G., due to both girls complaining of "somewhat similar" acts of indecency and sexual assault by Gomez, but a lack of physical findings present on the examination reports. *See McCombs*, 2018 WL 5260983, at *12; *Gaytan v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) (lack of physical evidence is a basis for needing evidence of extraneous offenses).

Gomez also argues that the evidence was too remote to have probative value. When determining the probative value of past criminal behavior, courts should consider "the closeness in time between the extraneous offense and the charged offense."   *Kiser*

10

*v. State*, 893 S.W.2d 277, 281 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). Here, B.G. testified that Gomez molested her between the sixth and eighth grades, around 2001-2004. Gomez was alleged to have molested D.G in 2008. A time period of four to seven years was not so remote as to erode the probative value of the extraneous offense evidence. This factor weighs in favor of admission. *See Gigliobianco*, 210 S.W.3d at 641.

### 2. Tendency of Evidence to Suggest Decision on Improper Basis

The acts recounted by B.G. could by their nature "tend to inflame," but Gomez was allowed substantial leeway to cross-examine B.G. regarding the prior trial where she was the complaining witness. Gomez was allowed on cross-examination to go into inconsistencies in B.G.'s testimony, as well as Gomez's acquittal in the prior case in which B.G. was the complainant. Additionally, B.G.'s forensic interview was played in its entirety for the jury and both parties questioned B.G. regarding that video evidence. The jury was allowed to determine B.G.'s credibility following her direct and cross-examination testimony. This factor weighs in favor of admission. *See id.*

### 3. Tendency of the Evidence to Confuse or Distract the Jury from the Main Issue, Be Given Undue Weight, and Consume an Inordinate Amount of Time

Gomez argues that the time needed to fully develop B.G.'s testimony, including calling outcry witnesses, took up substantial time and "took away time from the jury assessing the indicted offense." Although B.G.'s testimony did stretch over several volumes of the trial record, the substantial portion of the reporter's record involved argument of counsel to the trial court. There was no evidence that the amount of time

11

needed to develop B.G's testimony prevented the jury from assessing the indicted offense. Gomez makes no argument that B.G.'s testimony confused or distracted the jury from the task before them, or there was any indication that the jury heavily favored B.G.'s testimony in returning its verdict of guilty. This factor weighs in favor of admission. *See id.*

### 4. Conclusion of Balancing Test

Under the applicable standard of review, we conclude that the trial court did not abuse its discretion in determining that a danger of unfair prejudice, confusing the issues, misleading the jury, or undue delay did not substantially outweigh the probative value of the extraneous offense evidence regarding B.G. *See McCombs*, 2018 WL 5260983 at *13. We overrule Gomez's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
7th day of February, 2019.