NO. 07-09-0025-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 15, 2009

_____

BRIAN GARZA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 426TH DISTRICT COURT OF BELL COUNTY;

NO. 63,030; HONORABLE FANCY H. JEZEK, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant, Brian Garza, was convicted by a jury of evading arrest by use of a motor

vehicle,[1] a state jail felony punishable as a third degree felony by virtue of a deadly weapon

[1]*See* Tex. Penal Code Ann. § 38.04(a), (b)(1) (Vernon 2003).

finding.[2] During the punishment phase of the trial, Appellant pled true to an enhancement allegation[3] and the jury sentenced him to seventeen years confinement. Appellant asserts three issues asking whether: (1) the result of the proceeding would have been different had he received effective assistance from his counsel; (2) the trial court committed error by charging the jury with a deadly weapon instruction when evidence of actual endangerment was factually insufficient to justify a finding that the motor vehicle was used as a deadly weapon; and (3) the trial court's judgment of conviction should be modified to reflect the correct offense level.

Originally appealed to the 3rd Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the 3rd Court of Appeals and that of this Court on any relevant issue. *See* Tex. R. App. P. 41.3. We modify the trial court's judgment and affirm as modified.

## Background

In May 2008, Appellant was indicted by a Bell County Grand Jury for evading arrest by use of a motor vehicle. The indictment alleged an offense occurring on or about April 17, 2008. The indictment also alleged Appellant used and exhibited his vehicle as a

---

[2]*See* Tex. Penal Code Ann. 12.35(c) (Vernon Supp. 2008).

[3]*See* Tex. Penal Code Ann. 12.42(a)(3) (Vernon 2003).

deadly weapon during the commission of the offense and it contained an enhancement paragraph describing a prior felony conviction.[4]

### I.    Pretrial Proceedings

On August 21, 2008, Appellant requested notice of the State's intention to use extraneous offenses at trial.  The State responded that, among other offenses, the State intended to present evidence that Appellant was driving while intoxicated when he was arrested on the instant offense.[5]

On November 3, 2008, the trial court held a hearing on Appellant's motion seeking to prevent the State from offering any evidence of intoxication.  Appellant asserted the evidence was irrelevant and, if relevant, more prejudicial than probative.  The State countered that evidence of intoxication was relevant to its allegation that, in the course of evading arrest, Appellant was operating a motor vehicle as a deadly weapon.  The State also asserted that Appellant's breath test and his throwing beer containers from the car while fleeing was the same transaction, contextual evidence.  The State indicated there would also be testimony by officers who believed Appellant's physical appearance at the time he was arrested indicated he was intoxicated, a technical supervisor of breath testing, and the person who administered the breath test.  The trial court overruled Appellant's

---

[4]Specifically, the indictment asserted that Appellant had previously been convicted of the felony offense of burglary of a vehicle.

[5]Appellant was charged with driving while intoxicated in a separate proceeding.

3

objection to evidence of him throwing beer containers from his car during the chase and withheld its ruling on the remaining objections until the State intended to proffer evidence of Appellant's intoxication. Prior to trial, the State filed a witness list naming Elmer Weber, a Department of Public Safety technical supervisor over breath testing and analysis.

## II. Trial

The following evidence was adduced at a jury trial held November 4 through 5. On April 17, 2008, at approximately 3:20 a.m., Officer Bradford Hunt first observed Appellant driving his vehicle very slowly. He ran Appellant's license plate and discovered it had expired four months earlier. In preparation for a traffic stop, he turned on the red and blue lights atop his patrol car. Appellant continued to drive. Officer Hunt then intermittently beeped his siren to no avail.

Appellant stopped at a traffic light. And, when the light turned green, Appellant remained at the intersection. Believing Appellant had finally come to a stop, Officer Hunt turned his spotlight on Appellant's car, called for assistance, and stood outside his vehicle behind the driver's door. Through the public address system mounted on the front of the car, he commanded Appellant to: "Stay right there, don't move or you are going to jail."

Appellant reacted by speeding away. Officer Hunt turned on his siren and alternating high beam headlights in addition to the red and blue lights atop his patrol car

4

and initiated pursuit.[6]  In the next thirty minutes, Appellant engaged numerous police officers in an eighteen mile car chase.  During the pursuit, Appellant's behavior included speeding as fast as fifteen to twenty miles per hour over the speed limit(s) through a residential neighborhood, road construction zone, and over highways; running stop signs; swerving within a traffic lane; throwing beer cans from his car; driving at speeds of forty to fifty miles per hour on deflated tires that were smoking with sparks flying from the bare rims; and, driving on the wrong side of a highway in the direction of oncoming traffic while crossing blind hills with very little visibility.

The car chase ended in a trailer park where Appellant was arrested.  When his car was searched, the officers found an empty can of beer and a twenty-four pack of beer containing three unopened cans.  Officer Shawana Neely, who drove the second patrol car in pursuit behind Officer Hunt, testified that, at the time of his arrest, Appellant's speech was slurred, his eyes were red and glassy, he staggered when he walked, and he smelled strongly of alcoholic beverage.[7]

Officer Joshua Moore testified that, after he obtained Appellant's consent, he administered two breath tests, one at 4:30 a.m. and a second test at 4:41 a.m.  Weber,

---

[6]At one point during the pursuit, there were three such vehicles in pursuit of Appellant.

[7]Prior to testimony related to Appellant's intoxication, a hearing was held outside the presence of the jury.  The State asserted that evidence of Appellant's intoxication was relevant to its deadly weapon allegation, *i.e.*, a person consuming large quantities of alcoholic beverage would be less likely to control their car than someone who had not been drinking.  Appellant asserted he did not receive proper notice that such evidence would be presented in the guilt/innocence phase and asked for a continuance to obtain an expert to counter the State's evidence related to Appellant's breath test.  The trial court overruled Appellant's objection to admission of the evidence and denied Appellant's motion to continue.

technical supervisor for DPS's breath testing program, testified that the legal limit, or point in which all individuals are deemed intoxicated, for a breath test in Texas was .080. Appellant's results were .084 and .087, respectively.[8]

Following the testimony, the jury found Appellant guilty of evading arrest while using his automobile as a deadly weapon. During the punishment stage of the trial, Appellant pled "true" to a prior felony conviction alleged in the indictment[9] and the trial court instructed the jury that the maximum sentence of confinement was a term not more than twenty years or less than two years. Thereafter, the jury sentenced Appellant to confinement for seventeen years. The trial court issued its judgment of conviction and this appeal followed.

## Discussion

Appellant contends his counsel was ineffective because, although his counsel had received notice the State intended to offer evidence of his intoxication at trial, his counsel

---

[8]Appellant's counsel cross-examined Weber on issues related to the design of Breathalyzer machines, the reaction of acetate to alcohol, degrees of machine error, the effect of mouth alcohol from belching or burping prior to, or during, a test and the absence of a blood sample. After establishing that Weber did not know, or was not privy, to certain information, he obtained Weber's testimony that he could not tell the jury based on a lack of the information whether the breathalyzer results were accurate regarding the time of the car chase.

[9]Neither party put on any witnesses during the punishment stage. The State offered evidence of various judgments and pleas by Appellant including three guilty pleas to the offense of evading arrest on November 19, 1992, March 11, 1994, and March 5, 1999. Although § 38.04(b)(2) of the Penal Code, permits an offense of evading arrest to be punished as a third degree felony if the person "uses a vehicle while [he] is in flight and [he] has been previously convicted [of evading arrest]," this provision is inapplicable here because the State did not offer evidence of these prior convictions during the guilt phase of Appellant's trial. *See Calton v. State,* 176 S.W.3d 231, 234, 236 (Tex.Crim.App. 2005).

6

was not prepared to counter the State's evidence.  Appellant next contends the trial court erred by charging the jury with a deadly weapon instruction when there was insufficient evidence to justify a jury finding on the issue.  Lastly, Appellant asserts the trial court's judgment of conviction should be modified because he was convicted of a second degree felony offense rather than a third degree felony offense as stated in the judgment.

## I.        Ineffective Assistance of Counsel

We examine ineffective assistance of counsel claims by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex.Crim.App. 1986). Appellant has the burden to show by a preponderance of evidence (1) trial counsel's performance was deficient, *i.e.,* fell below the prevailing professional norms, and (2) the deficiency prejudiced the defense; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different.  *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999).  We examine the totality of counsel's representation to determine whether Appellant received effective assistance but do not judge counsel's strategic decisions in hindsight.  *Id.* at 813.  Rather, counsel's conduct is viewed with great deference.  *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App. 2005).  Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  *Thompson*, 9 S.W.3d at 812.

In the usual case in which an ineffective assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). This is generally the case because a silent record provides no explanation for counsel's actions and therefore will not overcome the strong presumption of reasonable assistance. *Freeman v. State,* 125 S.W.3d 505, 506 (Tex.Crim.App. 2003); *Rylander v. State,* 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal." *Patterson v. State*, 46 S.W.3d 294, 306 (Tex.App.–Fort Worth 2001, no pet.).[10] Appellant did not file a motion for new trial, the trial court did not hold a hearing to determine whether Appellant's complaints of ineffective assistance involved actions that may, or may not, have been grounded in sound trial strategy and the record does not reflect counsel's reasons for doing, or failing to do, the things of which Appellant complains.

That said, the record reflects that Appellant's counsel had notice of the State's intention to use evidence of Appellant's intoxication at trial as early as August 2008, nearly three months before trial. The hearing transcript for November 3 indicates Appellant's

---

[10]The most effective procedure for raising a claim of ineffective assistance is almost always habeas corpus. *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex.Crim.App.2003).

counsel had adopted a strategy to keep such evidence from being admitted at trial. Prior to the admission of the evidence on November 4, Appellant's counsel again argued against its admission but failed. Thereafter, having been unsuccessful in persuading the trial court that the evidence should be excluded, Appellant's counsel thoroughly and ably cross-examined the State's primary witness regarding the reliability of breathalyzer tests and Appellant's breath test. Based on this record, we cannot say that Appellant's legal representation fell below prevailing professional norms.

Appellant also complains that his trial counsel was ill-prepared because he failed to procure an expert on intoxication in advance of trial to counter the State's evidence. Trial counsel's failure to call an expert is irrelevant absent a showing that an expert witness was available to testify on this issue and the expert's testimony would have benefitted Appellant. *See King v. State,* 649 S.W.2d 42, 44 (Tex.Crim.App. 1983). Appellant makes no such showing.

On this record, to find Appellant's counsel ineffective, we would have to engage in prohibited speculation. *See Stafford v. State*, 101 S.W.3d 611, 613-14 (Tex.App.–Houston [1st Dist.] 2003, pet. ref'd). Absent evidence of counsel's strategy, we cannot denounce counsel's actions as ineffective nor can we determine that there is a reasonable probability that the outcome would have been different. For this reason, Appellant has not met either prong of the *Strickland* test. Accordingly, Appellant's first issue is overruled.

## II.     Jury Charge

An appellate court reviews a trial court's submission, or omission, of a jury instruction under an abuse of discretion standard. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex.Crim.App. 2000); *Slott v. State*, 148 S.W.3d 624, 632 (Tex.App.–Houston 2004 [14th Dist.], pet. ref'd). When applying this standard, we may not substitute our judgment for that of the trial court but simply determine whether the trial court's ruling was arbitrary or unreasonable. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App. 2001).

To establish a deadly weapon finding, the State must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon,[11] (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; *Ex parte Jones*, 957 S.W.2d 849, 851 (Tex.Crim.App. 1997); and (3) that people were actually endangered, as opposed to a mere hypothetical potential for danger if others had been present. *Cates v. State*, 102 S.W.3d 735, 738 (Tex.Crim.App. 2003).

Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991). A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Ex parte McKithan*, 838 S.W.2d 560 (Tex.Crim.App. 1992). Specific intent

---

[11]"Deadly weapon" means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2008).

to use a motor vehicle as a deadly weapon is not required. *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000); *Walker v. State*, 897 S.W.2d 812, 814 (Tex.Crim.App. 1995).

The State's evidence at trial indicated that, during Officer Hunt's pursuit, Appellant exceeded the speed limit driving through a residential area, construction zone, and over highways and streets by as much as twenty miles per hour. He was intoxicated and weaved within, and without, his driving lane. After his tires were deflated, he drove his disabled vehicle on the deflated tires creating a thick smoke from burning rubber and, when he no longer had tires, created a stream of sparks where the rim's metal met the pavement at speeds of forty to fifty miles per hour. He crossed the center line of a highway and drove in the direction of approaching traffic over blind hills with limited visibility to determine whether cars were approaching the hill's crest from the opposite direction. He passed vehicles at intersections where cross traffic was blocked by police officers and cars pulled off the roadway to avoid his oncoming vehicle. At the very least, these facts raise an issue whether the manner in which Appellant used his vehicle made it capable of causing death or serious bodily injury.[12] See *Sierra v. State,* 280 S.W.3d 250, 255 (Tex.Crim.App. 2009); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).

---

[12]The Code of Criminal Procedure directs the trial court to submit to the jury any issue that is raised by the facts; Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007), and, when charging the jury upon an issue adverse to the defendant, the trial court errs in issuing the instruction only if the issue is not suggested or raised by the facts. *Cannon v. State*, 84 Tex. Crim. 504, 208 S.W. 339, 341 (1918) (on reh'g).

Appellant asserts this evidence is insufficient to raise a fact issue because it only establishes a mere hypothetical potential for danger if others had been present. Here, Appellant's driving endangered not only the officers in pursuit of his vehicle but the public, *i.e.,* drivers who would have likely crossed his path in the absence of police intervention at intersections and those drivers who actually pulled onto the shoulder to avoid Appellant's oncoming vehicle. *See Sierra*, 280 S.W.3d at 254-56 [collected cases cited therein]; *Drichas*, 175 S.W.3d at 798 (where defendant, in the course of evading detention with a vehicle, led law enforcement officers on a fifteen-mile high-speed chase during which he disregarded traffic signs and signals, drove erratically, wove between and within lanes, turned abruptly into a construction zone, and drove on the wrong side of the highway, Court of Criminal appeals held that his use of a motor vehicle "posed a danger to pursuing officers and other motorists that was more than simply hypothetical"); *Mann v. State*, 13 S.W.3d 89, 92 (Tex.App.–Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex.Crim.App. 2001) (evidence is sufficient if it raises a fact issue whether "others were endangered").

We find that the State's evidence was sufficient to create a fact issue whether Appellant's manner of using his car posed a danger to pursuing officers and the public that was more than hypothetical. Accordingly, the trial court did not abuse its discretion by issuing a deadly weapon charge to the jury. Appellant's second issue is overruled.

## III.    Judgment of Conviction

The trial court's *Judgment of Conviction* indicates Appellant was convicted of evading arrest with a motor vehicle, a third degree felony.  Appellant contends the trial court mischaracterized his offense as a third degree felony because he was sentenced under the punishment range applicable to a second degree felony and the sentence actually imposed was greater than that allowed for a third degree felony.

As previously noted, Appellant was indicted for evading arrest while using a motor vehicle, a state jail felony, under section 38.04(b)(1) of the Penal Code.  In addition, the indictment alleged the use of a motor vehicle as a deadly weapon in the commission of the offense, making the offense *punishable* as a third degree felony.[13]   Still further, the indictment alleged a prior felony conviction, making the offense *punishable* as a second degree felony.[14]

At the guilt/innocence stage of the trial, the trial court submitted to the jury the primary offense under section 38.04(a), the use of a motor vehicle under section 38.04(b)(1), and a special issue as to whether Appellant used that vehicle as a deadly weapon under section 12.35(c)(1).  The jury found Appellant guilty and answered the special issue in the affirmative.  The trial then proceeded to the punishment phase where the prior felony conviction came into play.

[13]*See* fn. 2, *supra.*

[14]*See* fn. 3, *supra.*

The punishment range for convictions of state jail felonies are set forth in section 12.35 of the Texas Penal Code. The statute specifies the punishment for regular or non-aggravated state jail felonies in section 12.35(a) and (b), and for aggravated state jail felonies in section 12.35(c).

Here, Appellant was convicted of evading arrest under section 38.04(b)(1), a state jail felony. The nature of the offense never changed but, because of the jury's affirmative finding of the use of a deadly weapon during the commission of the offense, the offense became an aggravated state jail felony *punishable* under section 12.35(c) as a third degree felony. The state jail felony of which Appellant was convicted did not, however, become a third degree felony.

During the penalty phase, that part of the indictment alleging the prior felony conviction was read to the jury and Appellant pled "true" to these allegations. In its jury charge, the trial court authorized the jury to assess a sentence of confinement for a term not more than twenty years or less than two years–the sentence applicable to a second degree felony offense; pursuant to section 12.42(a)(3) of the Penal Code. Aggravated state jail felonies, punishable under the provisions of section 12.35(c), are subject to the habitual criminal provisions of section 12.42(a). *State v. Mancuso*, 919 S.W.2d 86, 90 (Tex.Crim.App. 1996). *See Bunton v. State*, 136 S.W.3d 355, 363 (Tex.App.–Austin 2004, pet. ref'd).

Although Appellant was punished within the proper, applicable punishment range based on this crime and his criminal history, he was, nonetheless, convicted of only a state jail felony. The notation on the trial court's judgment indicating Appellant was convicted of a third degree felony is a clerical error, not the product of judicial reasoning.[15] Thus, we are authorized to reform the trial court's judgment so that it may speak the truth. *See French v. State*, 830 S.W.2d 607, 609 (Tex.Crim.App. 1992); *Smith v. State*, 223 S.W.3d 690, 696-97 (Tex.App.–Texarkana 2007, no pet.). This Court has the authority to modify an incorrect judgment when it has the information and evidence necessary to do so. *See* Tex. R. App. P. 43.2(b); *Figueroa v. State*, 250 S.W.3d 490, 518 (Tex.App.–Austin 2008, pet. ref'd), cert. denied, 129 S.Ct. 1340, 173 L.Ed.2d 609 (2009).

We therefore reform the trial court's judgment to reflect Appellant was convicted by a jury of evading arrest, a state jail felony, aggravated by a finding that Appellant used and exhibited a deadly weapon in the commission of the offense, enhanced by a prior felony conviction. Although we sustain Appellant's third issue as to modification of the trial court's judgment, we overrule his issue in so far as it asserts that the sentence imposed was greater than that allowed by law.

---

[15]Likewise, the failure of the *Judgment of Conviction* to reflect that the offense was enhanced by a prior felony conviction is a clerical error.

## Conclusion

We modify the judgment of the trial court to indicate Appellant was convicted of a state jail felony, aggravated by the use of a deadly weapon, enhanced by a prior felony conviction.  As modified, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

Publish.

16